IZLAR v. MANCHESTER AND AUGUSTA R. R. CO.

1. CHARGE—APPEAL—MISTAKES.—A slight mistake in stating issues raised by pleadings is not reversible error. Such mistakes should be corrected by calling trial Judge's attention to them at the time, or by motion for new trial.

2. IBID.—No error for Judge not to be able to distinguish the difference between extraordinary and ordinary care.

3. RAILROADS—LICENSEE—TRESPASSER.—A party going to a railway station to see a passenger off, or to meet one, especially a member of his family, is a licensee as to the property of the railroad, and not a trespasser.

4. IBID.—IBID.—NEGLIGENCE—DAMAGES—LIGHTS.—A railroad company is required to use ordinary care in keeping in repair the approaches to its stations, and is responsible in damages to a licensee approaching its station, caused by his falling down a cut negligently made by it outside its own property, in levelling its station grounds, and by failing to light such place.

5. CHARGE.—A request containing inferences from the testimony is properly refused.

Before GAGE, J., Orangeburg, September term, 1899. Affirmed.

Action by William V. Izlar against Manchester and Augusta R. R. Co. Defendant appeals.

*Messrs. Moss & Lide* and *J. T. Barron,* for appellant, cite: *R. R. Co. is not liable for damages happening outside of its property, over which it has no control:* 34 S. C., 451; 26 Ia., 24; 59 Me., 183; 22 Ore., 430; 68 Tex., 342; 69 Me., 640.

*Messrs. Izlar Bros.* and *T. M. Raysor,* contra, cite: *No*

*error to refuse request containing unsound propositions:* 36
S. C., 371; 45 S. C., 146; 52 S. C., 224. *How misstatement
of issues are to be corrected:* 35 S. C.; 459. *Plaintiff not a
trespasser, but company was under obligation to him to keep
its approaches in good condition:* 69 Me., 340; 35 Am. and
Eng. R. R. Ca., 476; 81 Mich., 156; 47 Am. R., 596; 53 Ib.,
756; 54 Ib., 73; 98 Am. D., 321; 96 Ib., 323; 4 Am. St. R.,
235; 7 L. R. A., 690; 39 S. C., 171; 20 L. R. A., 520. *Must
provide lights:* 5 Am. St. R., 356; 4 Ib., 235; 44 Am. R.,
446; 39 S. C., 171; *and this duty extends to persons seeing
passengers on or off:* 10 Am. St. R., 442; 13 Am. St. R.,
399; 23 Am. R., 753; 20 L. R. A., 527; 21 Am. R., 377.
*As to negligence:* 38 Md., 568; 2 Am. St. R., 198; 6 C. B.
(N. S.), 923; 19 Am. St. R., 448.

April 11, 1900. The opinion of the Court was delivered
by

MR. JUSTICE POPE. The plaintiff brought his action
against the defendant to recover $5,000 damages for break-
ing his leg and his ankle, through defendant's failure to keep
safe its way of egress and ingress to its station in the city of
Orangeburg, S. C., on the night of the third of December,
1897, where the plaintiff was endeavoring, in the darkness of
the night, with no lights on defendant's premises, to reach
such station to receive his wife and daughter, who were pas-
sengers on defendant's train, which was scheduled to and did
arrive at such station at 5 :37 o'clock. The trial was had
before Judge Gage and a jury. Verdict for plaintiff for
$2,000. After entry of judgment, defendant appealed on the
following alleged errors in the charge of the presiding Judge,
to wit : "First, That his Honor, the Circuit Judge, erred in re-
fusing to charge the first request of the defendant which is as
follows : 'That it is not the duty of. the railroad company to
provide for lighting of points outside of its property, and if
the jury believe from the evidence that the accident was
caused by the failure of the city of Orangeburg to provide
proper lights on its street near the station grounds of the

company, and did not so provide such lights, then they must find for the railroad company.' Second. That his Honor erred in refusing to charge the second request of the defendant, which is as follows: 'That if the jury believe from the evidence that the accident occurred before the plaintiff got upon the right of way or the property of the company, then they must find for the defendant.' Third. That his Honor erred in refusing to charge the third request of the defendant, which is as follows: 'That if the jury believe from the evidence that the culvert, ditch or embankments were constructed by others than the railroad company, and outside of its property or right of way, then they must find for the defendant.' Fourth. That his Honor erred in refusing to charge the fourth request of the defendant, which is as follows: 'That if the jury believe from the evidence that the accident occurred on Dukes avenue, a public street of the city of Orangeburg, and not upon the property of the railroad company, then they must find a verdict for the defendant.' Fifth. That his Honor erred in refusing to charge the seventh request of the defendant, which is as follows: 'That if the jury believe from the evidence that the street lamp on said street of said city would have given sufficient light for the plaintiff to have avoided the accident, and that it was the duty of the city to have kept the same lighted, and it was not so lighted, then the jury must find for the defendant.' Sixth. That his Honor erred in charging the jury, in his statement of the case, the following: 'fell over this embankment and broke one leg and dislocated the other ankle.' This being a misstatement of the claim of the plaintiff, and was thereby calculated to mislead the jury. Seventh. That his Honor erred in the charging the jury as follows: 'if the railroad company saw the public use it (a way of ingress and egress) on its land or the land of another, and recognized the right of the public to use it for a way of ingress and egress to its railroad station, then it makes no difference whose land it was on.' Eighth. That his Honor erred in charging the jury the following: 'that I don't know that there is much difference

(between ordinary care and a great degree of care), but I am bound to tell you there is.    The law says that a high degree of care is one thing and an ordinary degree of care is another thing; if you can see it, see it.' "

The appellant in its sixth request complains of reversible, alleged reversible, error commited by the Circuit Judge in his charge to the jury, by stating that the plaintiff "fell over this embankment and broke one leg and dislocated the other ankle."    When the language complained of was used by the Circuit Judge, he was describing to the jury what the allegations made by the plaintiff in his complaint were.    The complaint stated, "The plaintiff, without fault on his part, fell over the said embankment with great force, whereby his right ankle was dislocated and one of the bones in his right leg, between the knee and ankle joint, was broken."    Nothing was said during the trial by the counsel on either side as to this slight mistake.    The complaint had been read to the jury; the plaintiff had testified to the same facts stated in the complaint; and his attending physician had also testified to the same effect as the plaintiff.    We think there was no reversible error.    This Court, in the case of *Rumph* v. *Hiott,* 35 S. C., 459, has said: "The proper means of correcting such errors, if errors there be, is by bringing the matter to the attention of the Judge at the time, or at most by a motion for a new trial."    The record discloses that neither course was taken by the defendant.    Although a motion for a new trial was made, this matter was not called to the Judge's attention or relied upon. The sixth exception is overruled.

In the eighth ground of appeal, the appellant suggests error because the Circuit Judge, while he charged the jury that the law required him to charge there was a difference between ordinary care and a great degree of care, still he himself could not see it.    The charge of the Judge emphasized the law which was to govern the jury in this case, when he held the defendant only liable to the plaintiff for ordinary care.    *Therefore,* it is pure abstraction

whether the Circuit Judge was able to distinguish between extraordinary and ordinary care. This exception is over-ruled.

We think the first, second, third, fourth, fifth and seventh grounds of appeal may be considered together. What relation subsists in law between one who visits the station of a railroad to meet or to part with a wife or child, who is already or is to become a passenger on such railroad, and such railroad? We ought to remember in considering this question, that railway companies are clothed by law with certain privileges by the public in return for certain concessions to the public. Railways are common carriers for hire of persons and property. As such common carriers they owe a duty of extraordinary care with respect to their passengers and the personal property transported. But the Circuit Judge, in the case at bar, held that they owed a duty to the persons who are embraced in the question we are endeavoring to consider. Such persons, who repair to the stations of railroads to make inquiries after property in charge of such railroads, are not trespassers upon the grounds of the railroad at their stations; they are *licensees* in going over the railroad lands and to their stations. When a person who goes upon the lands of a railroad in order to reach the station at which his wife or child embarks or disembarks from the passenger train of such railroad, he is not a trespasser in so doing; he, too, is a *licensee.* Speaking of this matter, the American and English Encyclopedia of Law, vol. 5, at page 518, says: "Persons going upon a carrier's premises or entering a carrier's vehicle to assist a passenger, to greet an arriving passenger, or to take leave of a departing passenger, cannot be deemed passengers themselves. Nor are they trespassers, properly speaking; they should be considered rather in the light of *licensees,* to whom the carrier owes certain duties." Under Note 2, of same page, the authority says: "A company is under special duty to provide suitable and safe accommodations with regard to its depot to 'persons who are on the

premises to welcome the coming or speed the parting guest.' "
*Hamilton* v. *Texas &c. R. R. Co.,* 64 Texas, 251; *Texas
&c. R. R. Co.* v. *Best,* 66 Tex., 116; *Doss* v. *R. R. Co.,* 59
Mo., 27; *Montgomery &c. R. R. Co.* v. *Thompson,* 77 Ala.,
448; *Atchison etc. R. R. Co.* v. *Johns,* 36 Kan., 769. Just
now we must again remark that our question is narrowed to
the instance of a person going to the station of a railroad
over the land leading to such station, to receive a wife or a
child either as an embarking or disembarking passenger on
such railroad, for we conceive that a man owes a higher duty
to his wife or child than any one else—for under his vows as
a husband he is bound by every consideration to protect his
wife as against any creature either natural or artificial, by
day or by night, on anybody's premises; and to his child, he
is placed as a protector by the laws of nature. Therefore, in
answer to the question as we propounded it, we answer that
such person is not to be considered a passenger, but he is to
be considered a *licensee,* clothed by the railroad with the
right to pass by the way or ways over the lands of the rail-
road to its stations where passengers embark or disembark.
What duty, if any, does the railroad owe such persons? Only
ordinary care. Now what is involved in the "ordinary care"
owed by railroads to a person going over its way or ways,
through its lands surrounding its stations, to meet his
wife or child, who is a passenger on a passenger train
of such railroad? The Circuit Judge held that the
railroad company, as before remarked, was to exercise only
ordinary care to such persons. This is his language: "In
my judgment, the railroad is held to exercise ordinary care,
and I have already defined to you what that is. I do not
mean to tell you that a railroad company is not liable for
care; it is, and I charge you that the railroad sustained an
obligation to this plaintiff—that is, if he went on the business
he says he went there on, to meet his wife and daughter.
They (the railroad company) sustained the obligation to
keep the way from the street to the station house in a reason-
ably safe condition. In other words, the company must

22—57

exercise the same care that a man of ordinary business ability, under the same circumstances, would have exercised about his own matter. What are the issues for you? The issues are: did this gentleman go there to meet his wife and daughter? I tell you, if he did, he had a right to go there. Second, what relationship did the railroad stand to him? I tell you they were under the obligation to exercise ordinary care to keep the way in safe condition. I tell you, if the way of ingress traveled that night by this man, from Dukes street into its station house, which the public was accustomed to go and use, and they knew of it, saw it and accepted it, then they were bound to keep that way in safe repair. Then, if you conclude that this accident happened through any lack of care on the part of the railroad company, if you conclude that their conduct amounted to lack of ordinary care, then you must find for the plaintiff. These are all questions for you. Now about lights. Gentlemen, I charge you that it was the duty of the railroad company to provide a safe way there for passengers to get in and off this train, and it is for you to say what a safe place is. It is for you to say if a place where a railroad company receives its passengers is a safe place without lights—if it is a safe place to take a train on a dark night. It is for you to say, if you come to the conclusion that lights are necessary in a place of that kind under these circumstances, that is a question for you. If you conclude that the defendant had no lights there on that night, and that lights are necessary for safety, that is a matter for you, and you must find for the plaintiff. I cannot charge you whether lights were necessary or not; it is a matter of fact for you to say whether lights were necessary and whether lights were there or not." We think the Circuit Judge has correctly set forth the law as far as he has gone. But he has not gone far enough. He should have held the defendant responsible for any accidents which have occurred to the plaintiff by means of the embankment on lands at or near one of these usual modes of going to or coming from its station, if in the conclusion of the jury from the testimony such embankment

existed as claimed by the plaintiff. As it is well put in 2 Redfield on the Law of Railways, at page 243 : "A railway company is bound to fence its station, so that the public may not be misled, by seeing a place unfenced, into passing by a dangerous way, being the shortest to the station." *Burgess* v. *Great Western Railway Company,* 6 C. B. (N. S.), 923. Or as it is put by the Court in the case of *The Pittsburg, Fort Wayne and Chicago Railway Co.* v. *Bingham,* 23 American Reports, 751 : "But if such dangerous place or pitfall or excavation is by the side of a public road or footway along or over which the public have the right, and are accustomed to travel, it becomes the duty of the owner to adopt suitable and reasonable precautions to guard the public against injury resulting from the proximity of such dangerous place to the highway thus rightfully enjoyed. *Barnes* v. *Ward,* 67 Eng. C. L., 393 (and other cases)." In the case of *McKone* v. *Michigan Central Railroad Company,* 51 Mich., 601, where a husband had gone about 11 o'clock at night to the station of defendant railroad to receive his wife, who was a passenger to arrive at that hour on defendant's train. It became necessary for plaintiff to pass some distance along the sidewalk away from the place for passengers to alight, and in order to screen his necessary movement, he stepped from four to eight feet on defendant's grounds and fell into a deep hole and received injury. Plaintiff lost his case on Circuit when he sued the railroad for such injury, but the Supreme Court reversed the Circuit judgment, saying, among other things : "That the hole or sink in which the plaintiff fell was so situated that those frequenting the place would be in danger of getting in it; that it was a defect not unlikely to cause injury, and was left entirely uncovered and exposed, without an obstacle to arrest approach to it or turn persons from it, and without any light to betray its existence or position. Now at this point we may remark it was a portion of defendant's station ground, and included in the space allotted to the public and devoted to the convenience of persons having lawful intercourse with the station ; the company was bound to

keep it in a reasonably safe condition for its passengers, and whether in permitting the pitfall in question to exist, this duty of the company was not disregarded, was a question which the Court was not justified in ruling against the plaintiff. The facts were very strong that the company was at fault. If we believe the evidence, which is undisputed, the plaintiff was not a trespasser. His occasion was not only lawful, but it was obviously within the license which the company had extended to the public. It is admitted in argument that had his presence at the station been in the character of a hackman engaged in running for passengers, his stepping aside would not have been wrongful, and the duty of the company would have extended to him. We think it would be straining common sense to make such a distinction as it is implied here. He was a customer, within the essence of the rule just mentioned. The company was bringing his wife to him, and he went to receive and protect her. Had his errand been to receive a bale of goods or a horse, no one would doubt that he had all the rights of a customer, and it seems little less than preposterous to contend that the right was not simply different or inferior but absolutely wanting, because it was his wife that he went for?"

It will be observed in the requests to charge, which were declined to be charged by the Circuit Judge in the shape presented by the defendant, great stress was laid upon what the jury might do in case they found that the city council of Orangeburg by their failure to keep lamps burning on Dukes avenue the night of the accident had thereby caused the injury. The Circuit Judge cannot be too careful in touching upon facts. What business have Circuit Judges in directing juries as to what inference they should draw from certain facts? The true line for a Circuit Judge, under the present Constitution hedging their power to charge upon the facts, is to give the law to the juries, and then let the juries manage the facts for themselves. Circuit Judges still have the power to grant new trials, if they are conscious that verdicts are wrong. Besides, there was quite a spirited

contest in the matter of testimony as to this avenue; one side contended that where the defendant claimed that there ought to have been a light was no street, except that it might be a street some day in the future; while the defendant claimed it was an avenue now. Certain it was that the way to the station of the defendant, which is public, used by and with the concurrence of the defendant, was very near where this plaintiff fell over the embankment left by the defendant, when it was leveling the premises around its station. We feel that we have thus considered all these exceptions, which we must overrule.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.