SMOAK v. SAVANNAH, FLORIDA AND WESTERN R. R. CO.

1. RAILROADS—STEPS—CUSTOM—EVIDENCE as to its use of steps at a station platform, if not competent to show custom, is admissible, to show that the steps were adopted by defendant as a part of its accommodations for use of public.

2. IBID.—LICENSEE—SURROUNDINGS—NEGLIGENCE.—EVIDENCE as to accommodations by railroad for passengers and where trains were stopped, is responsive to allegations and admissible to show negli-

gence of company in providing accommodations for licensee and explanatory of surroundings.

3. IBID.—NOTICE.—DECLARATIONS of a member of the railroad commission to officer of a railroad company with reference to its depot *and platform,* are competent to show notice to the company of its condition.

4. IBID.—LICENSEE—PASSENGER.—A railroad company does not owe to licensee the same high degree of care that it does to a passenger, but it owes him ordinary prudence.

Before KLUGH, J., Colleton, March, 1902.    Affirmed.

Action by D. E. Smoak against Savannah, Florida and Western Railroad Co. From judgment for plaintiff, defendant appeals.

*Messrs. Mordecai & Gadsden,* for appellant, cite: *Evidence not competent to show custom:* 22 L. R. A., 725.    *Declarations of one member of R. R. Com. incompetent:* 62 S. C., 252.    *Degree of care due licensee:* 66 N. Y., 243; 37 S. E., 979.

*Messrs. Howell & Gruber,* contra, cite: *Evidence of the member of railroad commission competent:* 60 S. C., 237. *Licensee is entitled to mere ordinary prudence or precaution:* 57 S. C., 332.

March 3, 1903.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    *Statement of Facts.*—This is an action for damages alleged to have been sustained by the plaintiff through the negligence and recklessness of the defendant in failing to provide suitable lights and steps to the platform, at its station.    On the 15th February, 1901, the plaintiff's daughter, with her infant children, was a passenger on defendant's train from Green Pond to Ruffin, both stations being on said railroad.    The material allegations are set forth in paragraph 4 of the complaint as follows:

"4. That just prior to the arrival of the said passenger

car, this plaintiff entered upon the platform of the defendant company at the said station, such platform adjoining the defendant company's depot, and there awaited the arrival of the said car, believing that the officers and employees of the said defendant company would have the said passenger car drawn up to the said platform and cause the company's passengers to alight thereon; but as said car was approaching the said station and was only a short distance away, this plaintiff learned for the first time that the defendant company did not permit its passengers to alight from its cars on the said platform, but brought its passenger cars to a halt before reaching such platform, causing them to alight on the opposite side of the railroad track. That this plaintiff then started to descend the steps of the said platform for the purpose of crossing to the opposite side of the railroad track where he could receive his said daughter and her infant children, and assist them in alighting from said car, but the defendant company having carelessly, negligently and recklessly failed and neglected to provide any light or lights at its said station, it then being about 9 o'clock at night and the night being very dark, and the said defendant company having so negligently, carelessly and recklessly built and constructed its steps whereon to mount and descend from the said platform, the said steps being very narrow and very insecure, this plaintiff lost his footing thereon and fell to the ground, a distance of several feet, with great force, one of his arms striking the iron rail of the railroad track, and the said arm being thereby broken in three different places, and was otherwise bruised and injured in limb and body."

The defendant denied the material allegations of the complaint, and set up the defense of contributory negligence. The jury rendered a verdict in favor of the plaintiff for $2,500. The defendant appealed upon the following exceptions:

"First. That his Honor erred in overruling the objection of defendant to the following question proposed to Henry Crosby: 'Did people generally in going up on the platform

and in coming down use those steps?'   As the plaintiff was
endeavoring to establish the custom of the public and per-
mission of the company in the use of the steps; whereas, no
foundation had been laid for such question, either in show-
ing the length of time such steps has existed or that the
witness, Henry Crosby, had any personal knowledge of such
use by the public, with the permission of the railroad com-
pany.

"Second. That his Honor erred in overruling the objec-
tion of defendant to the following question proposed to
Henry Crosby: 'You either stopped on the platform or in
the swamp?'   As such question and answer were not rele-
vant to any issue in the complaint, as the plaintiff was not a
passenger, and the acts of negligence relied upon in the com-
plaint were the failure of lights on the platform and the
insecurity of the steps.

"Third. That his Honor erred in overruling the objection
of defendant to the following question proposed to Henry
Crosby: 'You either stopped on the platform or in the
swamp?'   As said question was not relevant to any issue
in the complaint, and was asked for the purpose of
prejudicing the minds of the jury against the company on a
matter not involved in the issues to be tried.

"Fourth. That his Honor erred in overruling the objec-
tion of the defendant to the question proposed to the witness,
Gus Smith: 'Now, you say they got off twenty-five or thirty
yards down the track below the public highway crossing at
the railroad, what was the character of the ground from
there to the depot?'   As the complaint does not allege that
the injuries to the plaintiff, D. E. Smoak, were caused by the
condition of the railroad premises at that point, but confines
the negligence of the defendant to the failure of lights on the
depot platform and to the insecurity of the steps.

"Fifth. Because his Honor erred in overruling objection of
the defendant to the question proposed to the witness, Gus
Smith: 'Now, you say that they got off twenty-five or thirty
yards down the track below the public highway crossing at

the railroad, what was the character of the ground from there to the depot?' As said question was entirely irrelevant to any issues in the cause, and as the witness, Smith, was not a passenger nor was the plaintiff a passenger, and the cause of action did not involve the rights of passengers alighting at that point, said question being propounded solely for the purpose of prejudicing the minds of the jury against the defendant company on an issue not involved in the pending action.

"Sixth. Because his Honor erred in admitting the testimony of the witness, C. W. Garris, as if the railroad commissioner had served notice upon the defendant company of any defect in its station, said notice must be in writing and should have been produced; and further, because the said C. W. Garris could not testify as the representative of the board simply as an individual member of the board; and further, because the testimony of the said C. W. Garris was entirely irrelevant to any of the issues involved in the case, and had no reference whatever to the failure of the company to provide lights at the station or to the insecurity of the steps, but simply tended to prejudice the minds of the jury against the defendant company for failure to provide facilities for passengers, which are not complained of in the complaint.

"Seventh. Because his Honor erred in charging the jury: 'If you think that a person of ordinary prudence—that is to say, a railroad of ordinary prudence—would provide lights about its station at night for the safety of the passengers, or persons who come to the station to receive passengers, then you are bound to conclude that that is one of the duties which the law requires of railroad companies.' As the duty required by law of the railroad company to its passengers is of very much higher nature than that required of the railroad company to a licensee, such as the plaintiff in this case.

"Eighth. Because his Honor erred in charging the jury: 'If you think it is prudent—a mere matter of ordinary prudence—for them to have such things, then you are bound to conclude it is the duty of the railroad company to have such

things.' As the plaintiff being a licensee, the railroad company was not liable to him for the high degree of care to which it is held in the case of a passenger, and would not be responsible for omitting to do or perform an act of mere ordinary prudence.

"Ninth. Because his Honor erred in charging the jury: 'If you should conclude that it is a matter of ordinary safety and precaution for the railroad company to have safe steps at its station, then you are bound to conclude that that is a duty which the law imposes upon this company, and if the plaintiff has established by the preponderance of the evidence that the railroad company failed to have safe steps, then you will be bound to conclude that the railroad company failed in that duty, and was in that particular negligent.' Whereas, the plaintiff being a licensee, the railroad company was not responsible to him for the same degree of care as in the case of a passenger, and would not be held liable for the omission of an act of mere ordinary prudence or precaution.

"Tenth. Because his Honor erred in charging the jury throughout as to the duties of a railroad company required by law; whereas, the plaintiff was admittedly a licensee, and, therefore, the company was not liable to him for mere ordinary negligence, and was not held to the high degree of care required of railroad companies in the case of passengers, and his Honor throughout his charge failed to draw this distinction to the jury."

*Opinion.*—The exceptions will be considered in regular order:

*First exception:* In order to understand how the question arose, it will be necessary to refer to the testimony. The following took place during the examination of Henry Crosby, a witness for the plaintiff: "Q. How many pairs of steps were there to the depot? A. Only one original pair of steps there. Q. After the original pair were put there, how many additional were put there? A. Another additional pair, but they were on the opposite

side to the original.   Q. They were on the north, the additional pair?   A. Yes, sir.   Q. Who put them up?   A. I couldn't say, only I heard the man say who put them there, Mr. Lemacks.   Q. You heard Mr. Lemacks say he put them there?   A. Yes.   Q. Do you know how long these steps have been there before the accident occurred?   A. They had not been there very long, I suppose a week, probably ten days; I could not say they had been there any longer than that.   Q. What was the character of these steps, how wide were they, I mean?   I don't mean the width of the plank. A. They were not over twelve inches.   Q. What were those steps built out of?   A. Two blocks sawed off a piece of square timber.   Q. Did the people generally in going up on the platform and coming down, use those steps?   Mr. Gadsden: Counsel is attempting to prove the custom, and the foundation has not been shown that this witness is familiar with the custom.   He says that these steps were not there but about ten days previous to that time, and the foundation has not been laid either to the length of time the steps were there or his acquaintance with the facts.   Mr. Gruber: It is not to show custom.   I am endeavoring to prove that people who were accustomed to visiting the station with the knowledge and consent of the railroad authorities, made use of these steps.   The Court: I think the testimony is competent.   Q. Did the people who had business with the railroad company use these steps going up on the platform and coming down?   A. Yes, I did myself.   Q. Did the agent know that the steps were being used?   A. Yes, I suppose so."   Conceding that the testimony was not competent to prove custom (which was not contended by the plaintiff), it was, nevertheless, admissible for the purpose of showing that the steps were adopted by the defendant as part of its accommodations for the use of the public, even if not so intended in the first instance.   *Rinake* v. *Mfg. Co.,* 55 S. C., 179.

*Second and third exceptions:* The question arose as follows during the examination of one of the plaintiff's wit-

20—65

nesses: "Q. What provisions was made for passengers at the depot while waiting on trains? A. None at all. Q. Any waiting room? A. Never heard tell of such a thing there. Q. You either stopped on the platform or in the swamp? Mr. Gadsden: There is no testimony that Mr. Smoak was a passenger, and the complaint does not state that he was a passenger. The Court: I think the testimony is competent. He had the right to the same treatment that a person doing business there ordinarly expects." It will be observed that the only objection to the testimony was on the ground that the plaintiff was not a passenger, which was not contended by him. In order to sustain the exception, it would be necessary to rule that the defendant owed no duty to any one except a passenger. This proposition is conclusively settled against the appellant's contention by the case of *Izlar* v. *R. R. Co.*, 57 S. C., 332, 35 S. E., 583. Furthermore, the testimony was responsive to the allegations of the complaint.

*Fourth and fifth exceptions:* The only objection to the testimony was as follows: "Mr. Gadsden: I object; Mr. Smoak was not a passenger, and there is no passenger complaining here about bad treatment or being put off in the dark thirty yards below the depot." In addition to what was said in considering the second and third exceptions, the testimony was admissible as explanatory of the surroundings.

*Sixth exception:* Mr. Garris testified that prior to the plaintiff's injury he and another of the railroad commissioners passed over this road on a tour of inspection, accompanied by the president or vice-president of the road, the superintendent and the road master. The record discloses the following: "Q. Did you examine the depot and platform at that place? A. Yes. Q. Did you at that time call to the attention of those officials— Mr. Gadsden: It has every indication of a leading question. Mr. Gruber: No, it is not. Q. Did you at that time, upon making examination of the depot and platform, have any conver-

sation with those officials with reference to the depot and platform? A. Yes. Q. Will you kindly state what was said? Mr. Gadsden: I object, on the ground that the board of railroad commissioners speaks as a whole, acting officially by a majority of its members. If the railroad commissioners have made any official report to the Plant System about that station, it is in writing, and I call for it. The individual members speak as individuals, but the board speaks as a unit. Any action must be by the majority of the board, and must be in writing. The Court: I think, Mr. Gadsden, that it is competent to show whether or not the railroad company had notice." His Honor's ruling is sustained by the case of *Stuckey* v. *R. R.,* 60 S. C., 237, 38 S. E., 416.

*Seventh, eighth, ninth and tenth exceptions:* The errors assigned are: *First.* That the law exacts a higher degree of care towards a passenger than it does to a licensee. The presiding Judge recognized this distinction and charged the appellant's request, which was as follows: "A railroad company is not held to the same high degree of care in reference to a licensee as it is to one of its passengers." *Second.* That a railroad company would not be liable for an injury to a licensee for its omission to observe towards him ordinary prudence. The ruling of the Circuit Judge is so fully sustained by the case of *Stuckey* v. *R. R.,* 60 S. C., 237, 38 S. E., 416, that we only deem it necessary to refer to that case to show that the exceptions cannot be sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.