[Criminal No. 822. Filed July 8, 1935.]

[46 Pac. (2d) 1082.]

MARY HARRIS, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. Herman Lewkowitz, for Appellant.

Mr. John L. Sullivan, Attorney General, and Mr. W. Francis Wilson, Assistant Attorney General, for the State.

ROSS, J.—Mary Harris has appealed from a verdict and judgment of conviction of murder in the second degree. At the trial she admitted she fired the shot that killed Walker Morrow, but claimed she did so in self-defense. She now urges that errors were committed in the trial (1) in the admission of evidence; (2) in an instruction as to the retreat rule of self-defense; and (3) in the ruling of the court refusing to instruct the jury that under the evidence the jury could only consider whether she was guilty of manslaughter. It will be helpful in considering these assignments first to state the evidence adduced upon the trial.

It appears therefrom that defendant, on the 11th day of May, 1934, the day on which she shot Morrow, lived at 320 East Madison Street, Phoenix, in a house occupied and used for purposes of prostitution; that she was the proprietor of such house, and that one Frances Stevens was an occupant or tenant thereof; that in the early hours of said day the deceased, Morrow, visited said Frances Stevens at her room and paid her $1, "for a party," as she said. The dollar the Stevens woman received was taken by her into the kitchen and put in a locked box, to which the defendant kept the key. The deceased "decided he didn't want to stay," or, as we understand the evidence, to keep "the party." He left the Stevens woman's room through a door opening into the living room where the defendant, who was sitting in the dining room, first saw him. As to what occurred then, there is no oral evidence except that of defendant; the Stevens woman having run away before the shooting and no one else being present. Defendant gave two versions as to what happened: The first one, to the county attorney very soon after the shooting, was taken down in shorthand and transcribed, and therein

she said the deceased came through the living room towards where she was sitting in the dining room, with his hands in his pockets, stating: "What are you doing here, Mud?" "You black s—— of a b——, I am going to break your neck." "Well, I have just got a darn good notion to choke you"; that she backed from the dining room into the kitchen, Morrow still pursuing her; that she went into her bedroom, got the gun, returned to the kitchen, and "told him to go back and he kept coming to me and the gun went off. I didn't even know I had my hand on the trigger. I thought he would get back."

At the trial the defendant testified to practically the same effect, except that she said she got the gun out of the buffet in the dining room and not in her bedroom. She also said that deceased, as he advanced upon her, said: "I am going to kill you, you black s—— of a b——. I am going to choke you stiff." She also testified that she figured he would do her bodily harm, and described the shooting in these words: "I raised the gun and— . . . The gun went off. I guess—I don't know whether I had my— I don't know that I had my hand on the trigger or not. I know I raised the gun and it went off."

The evidence claimed to have been erroneously admitted was that of the Stevens woman. This witness was not present and her testimony taken on the preliminary trial was introduced. The substance of what she testified to was an explanation of the reason why Morrow visited her room. She did not detail any conversation between herself and deceased further than to say, "He told me he was drinking and that is why he didn't want to have a party." This last statement by the witness went in without any objection and no motion to strike it was made. It is said by the defendant that all these things between

the witness and the deceased were without the hearing and presence of the defendant, and therefore incompetent and inadmissible. We think it proper that the prosecution should show that the deceased was rightfully in defendant's house, that its character was a standing invitation to persons to come to it, and that it was in response to such invitation that the deceased was there. The testimony of the Stevens woman was highly proper as showing the deceased was not an intruder or a trespasser. The reference to his intoxication, being a repetition of what the deceased had said to the witness in the absence of the defendant, if it had been objected to, should have been ruled out as hearsay, but it seems to have gone in without objection and cannot be made the basis of error at this time. No motion to strike was made. The fact that Stevens' testimony showed that defendant was operating a house of prostitution, even though it might tend to prejudice the jury against her, is no reason against its admission. It was the defendant who created the situation that called for such evidence. As is well said by the Attorney General in his brief:

"Had the defendant been a banker and had the killing occurred in the bank, growing out of a transaction with the bank, the actions of the deceased and the fact that the business establishment was a bank, certainly would not have been objected to by the defendant, and would have been admissible to show the facts placing the deceased in the bank and leading up to the altercation."

The testimony tended to show the circumstances and surroundings leading up to the killing of the deceased and was very properly admitted.

The instruction complained of is one of a great number submitting the law on the right of self-defense, and must of course be construed with all the

instructions given on that question. It reads as follows:

"The court instructs the jury that if the defendant at the time she shot the deceased had reasonable grounds to believe and did believe that the deceased was about to do her great bodily harm and was manifesting an intention to commence an attack upon her, then the defendant was not bound to retreat, but had the right to stand her ground and defend herself, even to the extent of taking the deceased's life. You are instructed, however, gentlemen, in that particular that while the defendant was not required to retreat, if you believe from the evidence beyond a reasonable doubt that she did retreat to her bedroom, and if you further believe from the evidence beyond a reasonable doubt that she had reached a place of safety, and you further believe from the evidence that she voluntarily returned from her bedroom to the kitchen upon the premises armed with a gun, and thereupon shot and killed the deceased, then I charge you the defendant was not justified under the law of self-defense in so killing the deceased under such circumstances."

The first sentence details the circumstances under which a person may take the life of another without retreating to protect himself against the aggressor. The last sentence gives the converse of the first and is hypothesized upon a statement of the evidence as detailed by the defendant in her explanation of the shooting to the county attorney and others. This instruction is not a comment upon the evidence as defendant suggests. It is in a form common in instructions and is not subject to criticism. *Lacy* v. *State,* 38 Ariz. 60, 297 Pac. 872.

██ It is contended by defendant that the evidence so conclusively and clearly shows the lack of malice on the part of the defendant that it was the duty of the court to instruct the jury not to consider any degree of homicide above manslaughter, and that the court erred in not granting her motion to so in-

struct. If as a matter of fact there was no evidence of any degree of homicide except manslaughter, the defendant's motion should have been granted. A careful study of the testimony satisfies us that the defendant killed Morrow, a boy of nineteen years of age, rather than return to him the dollar he had paid the Stevens woman, or at least it is a fair presumption from all the evidence that she did not shoot deceased out of fear of danger to her person so much as through resentment at his demand for the return of the dollar so paid. Defendant told the officers who arrested her immediately after the killing that Morrow wanted his money back and kept advancing towards her, with his right hand back of him, using abusive language, and that she backed away from him to her bedroom, opened a dresser drawer, got the gun, and came back and shot deceased. We think under the circumstances the court very properly left the determination of the degree of the offense to the jury, and that the evidence is amply sufficient to sustain a verdict of murder in the second degree.

The defendant having admitted that she shot and killed Morrow, the burden of proving circumstances of mitigation reducing the offense to manslaughter was upon the defendant, unless mitigation was shown by the state's proof. Section 5050, Rev. Code 1928.

We conclude that none of the assignments should be sustained, and accordingly affirm the judgment of conviction.

LOCKWOOD, C. J., and McALISTER, J., concur.