[Civil No. 2556.  Filed September 19, 1927.]

[259 Pac. 397.]

J. A. REID and MARY E. REID, Appellants, v. ALBERT TOPPER, Appellee.

Mr. L. J. Cox, for Appellants.

Mr. H. H. Baker, for Appellee.

LOCKWOOD, J.—Albert Topper, hereinafter called plaintiff, filed suit against J. A. Reid and Mary E. Reid, hereinafter called defendants. The substantial allegations of the complaint, so far as necessary for the determination of this case, read as follows:

"That . . . the defendants and each of them were the owners of and in possession of certain ranches and cattle ranges and a large number of range stock.

. . . That between January 1st, 1916, and March 20th, 1924, the plaintiff performed labor and rendered services for the defendants herein by doing general ranch work and working with and caring for the cattle and other range stock of the defendants . . . at the special instance and request of defendants. That in the month of March, 1924, an account was stated between plaintiff and defendants, and upon such statement a balance of four thousand six hundred twenty and no/100 ($4,620.00) dollars was found due plaintiff from defendants. That said defendants paid said plaintiff the sum of three thousand and no/100 ($3,000.00) dollars thereof. . . . That defendants agreed to pay to the plaintiff the said balance of one thousand six hundred twenty dollars ($1,620.00), and the defendant J. A. Reid executed and delivered to plaintiff the following note as evidence of such balance of indebtedness: (Setting up the note in full.)''

The complaint ended with an allegation that no part of the $1,620 had been paid, and prayed for judgment against defendants and each of them. Defendants demurred separately on the ground of misjoinder, and that the complaint set up an accord and satisfaction. The demurrers were overruled, and after a motion that plaintiff be compelled to elect between an action on the note and on an account stated was denied, defendants answered with a general denial and a special defense, the material part of which reads as follows:

''Defendants allege that upon the settlement set forth in paragraph three (3) of the amended complaint, in the month of March, 1924, wherein it is averred that an account was stated between plaintiff and defendants, the said account was struck upon misrepresentations of fact made by the plaintiff to the defendants, to wit, that he, the said Albert Topper, had not received one cent for his services for the Harquahala Live Stock Company, and that a certain well known as the Big Horn well was situate upon section 16, township 2, range 8 west, and that

he, the said Albert Topper, had deposited to the credit of said company five hundred dollars ($500.00), and that he, the said Topper, had never at any time received or used any moneys from or belonging to the defendants during the time that he, the said Topper, worked for the said defendants, all of which said statements were relied upon by the defendants at the time of the settlement, and the defendants were induced thereby to make said settlement, and that all of said statements were false and known by the plaintiff to be false, and by them believed and by deceit practiced by the plaintiff upon the said defendants at said time, whereby said deceit and said fraudulent representations of fact practiced and made by the plaintiff upon the said defendants, wrongful and untrue accounting and result were arrived at by the parties hereto, and that at said time the said account so arrived at was an untrue, wrongful, and fraudulent account, and that defendants, at said time, did not owe to plaintiff the sum of four thousand six hundred twenty dollars ($4,620.00), nor any sum in excess of the three thousand ($3,000.00) dollars that were then and there paid in cash to plaintiff by the defendants.''

—and an allegation that there was an accord and satisfaction and payment by means of the note set up in the complaint.

The matter was tried before a jury, which returned a verdict in favor of plaintiff for the full amount sued for with interest, and after motion for new trial was overruled an appeal was taken.

There are some twelve assignments of error, many of them containing subassignments, which we will consider as seems advisable. It was the position of defendants on the demurrers that the action was brought upon a promissory note signed by J. A. Reid alone, and that Mary E. Reid, therefore, was not a proper party to the action. The conclusion of defendants would be correct if their premise could be sustained, but it is very apparent to us from the portion of the complaint just quoted, that the suit was

not on the note, but rather on an account stated, the note being merely evidence of the balance due on such account. The allegations of the complaint are that plaintiff performed services for both defendants at their instance and request, that the account was stated between him and both of them, and that both agreed to pay the balance thereon. Such being the case, Mary E. Reid was undoubtedly a proper party, and the demurrers were properly overruled. Nor do we think the complaint shows an accord and satisfaction. While there are a few states which hold to the contrary, the general rule is that a note given in settlement of an account is not payment thereof, unless it is expressly agreed between the parties that it shall be so accepted. 30 Cyc. 1196. Since there is but one cause of action set up, to wit, for a balance due on an account stated, the court also properly denied defendants' motion for an election. Nor do we think there was error in the admission in evidence of the promissory note. This disposes of the first three assignments of error.

The fourth is that the court erred in certain remarks made in the presence of the jury, and four specific statements by it are set up in the assignment. While it might have been better for the court to have been a little more careful in the use of language, we do not think, in view of all the circumstances connected with these remarks, they can be considered as error—certainly not to such an extent as to require a reversal of the case.

In discussing the fifth to the ninth assignments, inclusive, we must first determine what were the real issues in the case, and the theory on which it was tried, for parties cannot try a case on one theory in the lower court and on another in this one. *Tevis* v. *Ryan,* 13 Ariz. 120, 108 Pac. 461; Id., 233 U. S. 273, 58 L. Ed. 957, 34 Sup. Ct. Rep. 481.

It is now the contention of defendants that in addition to the defenses admissible under their general denial, they had presented, as a special defense, fraud on the part of plaintiff in securing the account stated, and also mistake between the parties as to the true balance, and that therefore they should have been permitted to offer evidence not only on the issue of the alleged fraudulent conduct of plaintiff, but also as to any actual mistake made without fraud, so that the account might be surcharged or falsified, and that the instructions should have followed that theory. It is the claim of plaintiff, on the other hand, that the special defense set up on the pleadings ignores entirely the element of mistake and alleges only general fraudulent conduct on his part of such far-reaching effect that the account could not be surcharged or falsified, but, if defendants' allegations were true, must fall entirely as a stated account. The following colloquy between the court and counsel for defendants shows the theory on which the case was tried:

"The Court: My theory about the action is this, gentlemen, that this is an action upon a stated account—that is, it is an action upon a promise to pay a balance due. That action either falls or it wins for the entire amount. Now, if I am wrong about that I want to be set right.

"Mr. Timmons: I think your honor is right upon that point, but—

"The Court: That is, if this were an action upon an account, why, one item might fall and another might stand; but it is not such an action. It is an action upon an agreed settlement. Now, if there was no agreed settlement then this action fails.

"Mr. Timmons: That is correct, but this item, and these items—

"The Court: And it can't be sustained as to any item.

"Mr. Timmons: No; but all these items and all these things, they go and tend to controvert the testi-

mony of the plaintiff in this case, and, furthermore, they are circumstances that tend to show whether the settlement was a just settlement or not, and they bear most directly even as a circumstance upon the very questions of misrepresentation as to the condition of the account.''

It is of course the general rule of law that a stated account is not conclusive, but simply affords strong presumptive evidence which may be rebutted by showing either fraud or mistake. 1 C. J. 709. It is also true that when a party seeks to open, surcharge or falsify an account, he must specifically allege the grounds therefor and show what items were improperly inserted or omitted. General averments of ‹fraud or mistake are insufficient. *Hendy* v. *March,* 75 Cal. 566, 17 Pac. 702; *Fleischner* v. *Kubli,* 20 Or. 328, 25 Pac. 1086; *Aultman, etc.,* v. *Connors,* 122 Wis. 311, 99 N. W. 904.

It will be seen upon examining the pleadings that defendants did not allege any mistake in the account, but on the contrary set up that plaintiff misrepresented four specific facts, by reason of which fraudulent misrepresentations defendants were induced to make a settlement. While it is true that an account may be surcharged and falsified, either for actual fraud or honest mistake, yet when the allegations are based specifically on fraud of the character and extent set forth in the pleadings in this case, we are of the opinion mere mistake was not in the issues, and that if any of the alleged fraudulent transactions were sustained by the proof the entire account was vitiated and that plaintiff could not recover on the account stated, whatever his rights might be in another form of action. *Paulling* v. *Creagh,* 54 Ala. 646; *Farnam* v. *Brooks,* 9 Pick. (Mass.) 212; *Wharton* v. *May,* 5 Vesey, Jr. (Eng.), 27.

For the above reasons the court did not err in confining the evidence and instructions on the special defense to the issue of fraud.

We do not need, however, to test the alleged errors set up in assignments five to nine, inclusive, by this standard, but merely lay down the general principle applicable thereto, as other assignments present errors which in our opinion require a reversal of the case, and we presume that in a retrial the issues will be properly presented so far as the matters involved in the assignments first named are concerned, in accordance with the views expressed by us herein.

Assignment No. 10 deals with the refusal of the court to submit to the jury a separate verdict on behalf of defendant Mary E. Reid. This, we think, under the pleadings and the evidence, was clearly prejudicial error. It is permissible for defendants to set up both that no account was stated, and also matters which would entitle them to open, surcharge or falsify the account. *McKinster* v. *Hitchcock*, 19 Neb. 100, 26 N. W. 705; *Buhne* v. *Corbett*, 43 Cal. 264; Par. 420, Rev. Stats. Ariz. 1913, Civil Code. And the first named defense may be raised on the general issue. 1 C. J. 726.

It will be seen on examining the pleadings that the action is brought against J. A. Reid and Mary E. Reid as joint debtors. There is no allegation of partnership nor of anything else showing that either was authorized to bind the other. Under our statute when a suit is brought against joint debtors and on a joint cause of action, judgment may be given against those only as to whom the cause of action is proved. Pars. 550, 551, Rev. Stats. Ariz. 1913, Civil Code. It is evident from the form of action that a judgment against Mary E. Reid would bind not only the community property but her separate estate. This being so, she is clearly entitled to have any defense made by her presented to the jury and to have their verdict thereon. Her testimony in regard to the alleged settlement is in sub-

stance as follows: That she loaned her husband certain money to purchase outstanding interests in the cattle and range referred to by plaintiff in his complaint; that by mutual agreement the bank account was carried in her individual name, but that she merely signed checks on such account when her husband or plaintiff requested her to do so; that she was not consulted in regard to the terms of the settlement, although she knew it was under way; that she never agreed thereto, and when asked to accept the settlement and sign the note, she refused to do so. If as a matter of fact she did not agree to the settlement she was not liable in this action, for one of two joint debtors cannot bind the other by an account stated without authority to do so. *Reed* v. *Pixley*, 22 Minn. 540. It is true there was evidence in the record that she had agreed to the account, but this was a matter which should have been submitted to the jury for their determination under proper instructions.

We also think the court committed prejudicial error in the following instruction:

"If you believe from the evidence that the Reids, or either of them, at or prior to the time of the settlement, knew the location of the Big Horn well as to section 16 or section 17, then they cannot complain of any representations or statements made by Topper to them as to its location. Your attention is called, gentlemen, to the fact that the evidence shows that both these parties at the time, and prior to this transaction, immediately prior to the transaction on the 20th of March, 1924, were part owners in that well. If Topper had an interest in the well, and the Reids had not had any prior interest in the well, were strangers to it, it would be natural to suppose that Topper would have much information about the well which the Reids did not have; but I call your attention to the fact that the evidence from both parties indicates that both the parties to this alleged settlement, prior to the settlement, owned an interest, some sort of an interest, in the well."

There are two errors in the instruction. The first is in stating that the knowledge of one of the defendants was the knowledge of the other. There are certain cases, of course, when the knowledge of A. is imputed to B., but they are exceptions to the general rule that when a person is to be charged with knowledge of a certain fact, that knowledge must be brought home to him personally by notice either actual or constructive. The knowledge of the wife is imputed to the husband, and *vice versa,* under certain special conditions. They were sued here, however, not as husband and wife, but as joint debtors, and we do not think the rule of imputed notice applies under the pleadings in this case. *Parker* v. *Meredith* (Tenn. Ch. App.), 59 S. W. 167; *Potter* v. *Mobley* (Tex. Civ. App.), 194 S. W. 205.

A more serious error, however, is found in the latter part of the instruction. This is plainly and definitely a comment by the court on the evidence, which is of course forbidden both by our Constitution and statute. Const. Ariz., art. 6, § 12, par. 515, Rev. Stats. Ariz. 1913, Civil Code.

It is true that when the evidence on certain facts is uncontradicted or proved conclusively or the parties have agreed as to the facts, the court may in its instructions so state. *Gila Water Co.* v. *Gila L. & C. Co.,* 28 Ariz. 531, 238 Pac. 336. It may not, however, even in such cases, when from the proven facts certain inferences may or may not be drawn, discuss these inferences and instruct the jury as to which ones they should draw. *Southern Pine Co.* v. *Powell,* 48 Fla. 154, 37 South. 570; *Izlar* v. *Manchester & A. R. Co.,* 57 S. C. 332, 35 S. E. 583; *Nixon* v. *Railway Co.,* 141 Mo. 425, 42 S. W. 942; *Harris* v. *Carrington,* 115 N. C. 187, 20 S. E. 452.

For the foregoing reasons, the judgment of the superior court of Yuma county is reversed and the cause remanded for new trial.

ROSS, C. J., and McALISTER, J., concur.