[Criminal No. 738.  Filed April 1, 1931.]

[297 Pac. 872.]

# HENRY HORACE LACY, Jr., Appellant, v. STATE, Respondent.

Messrs. Speakman & Seaman, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Arthur T. LaPrade, Assistant Attorney General, and Mr. George T. Wilson, County Attorney, for the State.

ROSS, J.—From a conviction of an assault with intent to commit murder, upon the person of one L. C. Totten, the defendant, Henry Horace Lacy, Jr.,

has appealed. He claims that he was not given a fair trial, in that the jury was improperly instructed as to the law. The instructions of which complaint is made state the evidence and the contentions of the prosecution and defense in reference thereto. In addition to the facts disclosed in' such instructions, we give a general statement of the troubles, their origin, and the relation of the parties.

The Totten and Lacy families live in the same block in the village of Goodyear, Maricopa county. On the evening of April 25, 1930, the Tottens gave a dancing party, and, among others, invited the Lacys to attend. Hal H. Lacy and his four sons, Dub, Dick, Bud, and Henry Horace, the defendant, were among the guests. During the evening Dub Lacy and another guest, Frank Burns, were dancing together and in such a manner as to displease their host, L. C. Totten. The latter requested them to quit dancing as they were and to choose lady partners. From this the trouble started. Sharp words were passed. The defendant, Dub, Burns and Totten passed out of the house on to the front porch. Here Totten used some vile language toward Dub, who thereupon struck Totten, knocking him down. The latter then went into the house, procured a double-barrel shotgun and returned to the front porch. Two of his sons, Virgil and Donald, tried to take the shotgun away from their father, and, while doing so it was discharged into the ground or sidewalk. In the meantime, immediately after Dub had struck Totten, the defendant, who had left the scene for the Lacy home, only two or three hundred feet away, re-appeared with a revolver, and the shooting began. The evidence is in dispute as to who fired the first shot, the defendant claiming that Totten did and the prosecution that defendant did. Totten shot twice, once at defendant and once at defendant's father, Hal H. Lacy. Defendant emptied

his six-shooter at Totten. Result: Totten was shot in the breast by defendant and stabbed in the back with a knife by Hal H. Lacy, defendant's father, who, in turn, had his right arm shot off by Totten.

The same criticism is directed at all the instructions complained of. It is that they "are argumentative, confusing, contradictory, give undue prominence to certain facts and evidence, give undue prominence to certain aspects of the case, and single out one particular thing only as determinative of the jury's verdict." We here quote such instructions:

"You are instructed, gentlemen, that the defendant had the right to be in the home of the complaining witness, Totten, on the night in question, he being there by invitation of the complaining witness or members of his family.

"You are further instructed that the complaining witness, Totten, as the head of his household had the right to see that those who attended his home or visited his home by invitation demean themselves properly, and he had the right as the head of such household to prevent any unseemly conduct on the part of any of the guests who were there that evening; and if L. W. (Dub) Lacy and the young man, Burns, were dancing in an improper manner, the complaining witness, Totten, had the right to prevent them from a continuation of such dancing, or if they were dancing in a manner which appeared to him to be improper.

"You are further instructed that one is not justified in assaulting another by reason of opprobrious epithets which another may hurl at him; and in that particular you are instructed that as a matter of law L. W. (Dub) Lacy was not justified in assaulting the witness, L. C. Totten, merely because Totten called him a son-of-a-bitch, if you believe from the evidence that he did so call him a son-of-a-bitch. That does not in law justify an assault.

"Now, you are further instructed, gentlemen, that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Horace Lacy, on the night in question upon leaving the home of

L. C. Totten stated in the presence of L. C. Totten that he would go home and get a gun and shoot or kill L. C. Totten, or words to that effect, and that Totten heard him make such threat, then I instruct you that Totten would have been justified in firing at the defendant, Horace H. Lacy, upon his return to the home of Totten and committing an overt act tending to carry out the threat to kill Totten; and if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Horace Lacy, did leave the home of L. C. Totten and at the time of leaving the home of L. C. Totten he did in the presence of L. C. Totten threaten to go to his home and get a gun and return and shoot or kill L. C. Totten, or words to that effect, and that thereupon and pursuant to such threat he did soon thereafter return to the home of L. C. Totten and did commit an overt act tending toward the execution of that threat to kill L. C. Totten by the use of a gun, then I charge you that the defendant, Horace Lacy, cannot avail himself of the law of self-defense in this case even though he may thereafter have been in imminent danger at the hands of L. C. Totten. If on the other hand, gentlemen, you believe from the evidence in this case that the defendant, Horace Lacy, left the Totten home without the intention of returning and without making any threat against L. C. Totten, but upon his reaching his home he heard a shot fired at the Totten home, and knowing that his brother had had some difficulty with Mr. Totten, and knowing that other members of his family were at the Totten home, and fearing that they or some of them were in imminent danger of being injured at the hands of L. C. Totten, then I charge you that defendant had the legal right to return to the Totten home; and if you further find from the evidence beyond a reasonable doubt that he did so return and without an overt act on his part the witness, L. C. Totten, fired at him, then I charge you that the defendant, Horace Lacy, had the legal right to use such force as appeared to him at the time and place and in the light of the circumstances surrounding him, such force as appeared to him at the time and place to be necessary to protect himself against the assault of L. C. Totten even to the extent of taking the life of L. C. Totten.

"If you believe from the evidence in this case, or if there is a reasonable doubt in your minds as to whether or not Totten shot at Horace Lacy upon his return to the Totten home without any overt act on the part of Horace Lacy, and Totten was thereupon stabbed by H. H. Lacy, Sr., and Totten then returned and shot H. H. Lacy, Sr., then I charge you that defendant had the right to take such steps as appeared to him as a reasonably prudent person and in the light of the circumstances surrounding him to be necessary to defend his father from injury at Totten's hands even to the extent of shooting Totten.

"The primary consideration for you, gentlemen of the jury, is, first, whether or not Lacy, the defendant in this case, left the home of Totten after having made a threat in his presence to go to his, Lacy's home for a gun with which to shoot Totten. If he did that, then he is not entitled to self-defense in this action. If he left the home without the intention of returning, and without having made any threat, but fearing for the safety of the members of his family he did return and without making any overt act the complaining witness shot him or at him, then if you believe those facts to exist, or if there is a reasonable doubt in your minds as to whether or not that is the fact surrounding the case at that time and place, then your verdict should be that of not guilty."

The defendant admitted shooting Totten, but justified his act on the ground that he was defending himself and his father, Hal H. Lacy, against a murderous assault by Totten with a shotgun. One may, of course, defend against an attack on himself or a member of his family, even to the extent of taking the life of the assailant, if it is necessary to protect himself or a member of his family against murder, a felony, or great bodily injury. Section 4590, Rev. Code 1928.

Upon that issue the court in the above instructions hypothesized the evidence, both that supporting the defense and denying it, and declared the law. In other words, the court said: "If you find from the

evidence that such a state of facts exists, the law is as follows,'' etc. Such an instruction, we have held, is not an explanation or criticism of the evidence or an assertion or an assumption of any particular fact in the case, and does not violate section 12, article 6, of the state Constitution. *Pfeiffer* v. *State,* 35 Ariz. 321, 278 Pac. 63. The form of instruction used, it seems to us, is the only practical one in order to make an understandable and clear declaration of the law applicable to the facts, and one universally employed. It is not apparent to us that the instructions complained of are erroneous in the respects asserted. They do, indeed, direct the jury's attention to the issue of self-defense and give that ''aspect of the case'' great prominence, but such reference under the facts was not only proper, but to the advantage of the defendant. Indeed, he would have had a grievous complaint if such instructions or their equivalent had not been given.

The only part of the instructions that might well have been omitted is that part declaring opprobrious epithets by Totten did not justify L. W. (Dub) Lacy's assault on Totten. That instruction, while correct in principle, was erroneous in assuming as a fact that such assault was made; perhaps also because it was upon a collateral question and more or less abstract as to the issue of self-defense. But we are satisfied that such instruction could not have prejudiced the defendant in the least, and is not, therefore, reversible error. Section 22, article 6, Constitution.

The instructions upon the whole, the ones assigned as error and the others, were as full, complete, and fair as the defendant was entitled to have given. We think he was accorded a fair trial.

The judgment of conviction is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.