393 P.2d 274

**The STATE of Arizona, Appellee,**

**v.**

**Roy David WILLITS, Appellant.**

**No. 1343.**

Supreme Court of Arizona,

En Banc.

June 11, 1964.

Rehearing Denied June 30, 1964.

**186**

Robert W. Pickrell, Atty. Gen., Phoenix, and Norman E. Green, Pima County Atty., Tucson, for appellee.

Alfred J. Rogers, Tucson, for appellant.

STRUCKMEYER, Justice.

Defendant was convicted of attempting to explode dynamite in a dwelling house with intent to injure, intimidate or terrify a human being, in violation of A.R.S § 13–922, and two counts of assault with a deadly weapon in violation of A.R.S. § 13–249. From the final judgment of conviction of violation of A.R.S. § 13–922 and the sentence thereon of ten to twenty-five years. in the state penitentiary, he brings this appeal.

The following facts summarize the record. On the evening of December 29,. 1962, defendant went to the home of Eddie and Janice Urbano in Tucson. His former wife, Arthelia Willits, and their two children, Kenneth and David, were then living at the Urbano residence. Defendant's purpose, as he testified, was to talk with Arthelia and persuade her to attempt a reconciliation. He also stated that he wanted to see his boys. There had been considerable dispute between Arthelia and defendant on the matter of his right to visit the children. She was awarded their custody by the terms of the divorce and, apparently, not only refused to recognize his. visitation rights, but refused even to discuss the matter with him. In any event,. on the evening in question, he was determined to see the children and, according to his own testimony, was prepared to take "desperate" measures.

When he entered the Urbano home, he carried a homemade blasting device consisting of three sticks of dynamite and a battery-powered "detonating box" or "detonator." Inserted in one of the dynamite sticks was an electrically activated detonat-

ing cap which was connected by insulated wires to each of two terminals located on the detonating box. This box was also equipped with two switches and when both switches were in the "on" position the batteries provided a flow of current through the cap, causing it to explode. The shock of this blast was designed, in turn, to set off the more powerful charge of dynamite.

While he was inside the house, an altercation arose between defendant and Arthelia—he was holding her arm and she commenced struggling to get free. During this scuffle, in the presence of the two Willits children and the Urbano family, the detonating cap exploded. Minor injuries to some of the children and inconsequential damage to certain household furnishings resulted. The dynamite, however, did not explode.

Investigating officers who subsequently examined the scene found that the insulated wires which connected the detonator to the dynamite had been severed by the explosion. The detonator and the lengths of wire still connected to the terminals were salvaged and introduced into evidence at the trial. The package of explosive, with the wires attached thereto, was turned over to military officials at Davis-Monthan Air Force Base and subsequently destroyed.

This latter action gives rise to defendant's single assignment of error that the court improperly refused the following instruction:

"If you find that the plaintiff, the State of Arizona, has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against their interest."

It was apparent from the start of the trial that the defenses to the charge were (1) that the dynamite cap was discharged accidentally through static, stray electricity or radio and (2) that the dynamite was in such a condition that it could not be exploded.

The defendant testified that he had experience with dynamite; that he had, some four months before, taken the dynamite and buried it in a box in the desert, standing it upright at a 45 degree angle so that the nitroglycerine would drain out; that he had previously used dynamite which had been kept in storage under those conditions and that it had proven that it would not detonate. He also testified that he did not throw the switches on the detonator and that the discharge was accidental.

An expert witness, Sheldon Balk, an electrical engineer, testified from an examination of the detonator that it was possible for the wires to short and thus explode the detonating cap. He also testified that if the electric system in the house was ungrounded, a stray field or an electrical dis-

charge or a shock could have taken place or that a car near the house transmitting with an output of 25 watts could ignite the cap. Another expert was called who established that the output of the radio transmitter on the police car parked near the house was 25 watts.

Another, Donald A. Charles, a quarry foreman, experienced in the handling of dynamite, testified that with this type of blasting igniter precautions had to be taken because there were times when the cap would go off without energy from the detonator and could be ignited by radio frequencies, stray current, static and shock; that exposed terminals and wire without insulation are susceptible to static, stray electricity and radio. He further testified from an examination of the detonator that the chance of the electric detonator cap being accidentally ignited was fifty-fifty.

Defendant urges that the dynamite which was destroyed and the wires attached to the dynamite might have aided the defendant in showing that the explosion was accidental. It is thus plain that the defendant's requested instruction as to the inferences which could be drawn by the jury in the light of his evidence was the key to his entire defense.

Accordingly, the appeal here presents two questions—first, did the trial court err by rejecting defendant's requested instruction for the reason that it was comment on the evidence; and second, if the requested instruction is not a comment on the evidence, are there other sufficient reasons why the instruction should not have been given.

Article 6, § 27 of the Constitution of Arizona, as amended 1960, A.R.S., requires that:

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

The trial judge rejected defendant's requested instruction as a comment on a matter of fact of his own volition, saying:

"Of course, the reason why I'm going to refuse it I think its a comment on the evidence, I think the inference can be argued but we in this state are prohibited from singling out evidence and—I've violated that rule several times because nobody has made any objections to these instructions that come out of California, but this, to me, is singling out one piece of evidence and saying that this is what you can do, and it allows the Court too much leeway to—"

The evidence concerning the destruction of the dynamite is uncontradicted and comes solely from the lips of one witness. Captain Donald Pierson, an ordnance officer, member of the United States Air Force stationed at Davis-Monthan Air Force Base at Tucson, a witness for the State, who tes-

tified he took possession of the dynamite at the request of the .Tucson Police Department, that it appeared to be active and he had it destroyed. He also testified:

"Q * * * Captain, could the dynamite have been saved for the purposes of an analysis?

"A Yes, it could have if—it could have been, yes. * * *"

■■ It is well established that matters of fact conceded at a trial or established by uncontradicted or uncontroverted evidence may be assumed by the court in an instruction without violating the constitutional prohibition. Wolff v. First Nat. Bank of Winslow, 47 Ariz. 97, 53 P.2d 1077; Reid v. Topper, 32 Ariz. 381, 259 P. 397; Porris v. State, 30 Ariz. 442, 247 P. 1101. If the instruction assumed, which we do not think it does, that the dynamite and wires could have been saved, it still would not be a comment on the facts within the constitutional prohibition because it is uncontradicted that they could have been saved.

■ It is of importance to the settled law of this jurisdiction that the point be clarified. The instruction does not assume a fact. It says "if you find." Conditional statements embodied in instructions such as "if you believe," "if you are convinced," "if you find" are commonly given and have never to our knowledge been considered as violating the constitutional prohibition.

■ The Arizona judicial articles were originally taken from the State of Washington. Under an identical constitutional provision in Washington, their supreme court has repeatedly held *"The trial court is not forbidden to make reference to the evidence, but is only forbidden to comment thereon."* State v. Roberts, 144 Wash. 381, 258 P. 32, and citations. The word "comment" as used in the Constitution has the usual connotation of an expression of opinion. See Webster's, Third New International Dictionary.

■■ While it is not proper for a trial judge to single out a particular facet of the case in his charge to the jury to the exclusion of other matters, still this does not mean that he is forbidden to direct the jurors' attention to all matters properly within the issues for their determination. This Court said in Lacy v. State, 38 Ariz. 60, 64, 65, 297 P. 872:

"Upon that issue the court in the above instructions hypothesized the evidence, both that supporting the defense and denying it, and declared the law. In other words, the court said: 'If you find from the evidence that such a state of facts exists, the law is as follows,' etc. Such an instruction, we have held, is not an explanation or criticism of the evidence or an assertion or an assumption of any particular fact in the case, and does not violate section

12, article 6, of the state Constitution. Pfeiffer v. State, 35 Ariz. 321, 278 P. 63. The form of instruction used, it seems to us, is the only practical one in order to make an understandable and clear declaration of the law applicable to the facts, and one universally employed. It is not apparent to us that the instructions complained of are erroneous in the respects asserted. They do, indeed, direct the jury's attention to the issue of self-defense and give that 'aspect of the case' great prominence, but such reference under the facts was not only proper, but to the advantage of the defendant. Indeed, he would have had a grievous complaint if such instructions or their equivalent had not been given."

The proposed instruction is not a comment on the evidence within the constitutional prohibition.

It is now urged in this Court that the requested instruction is otherwise faulty.

■ We think, first, that it is unrealistic to predicate the decision on technical objections which were not made or presented to the court below and to which defendant did not have the opportunity to request a modification to cure any minor deficiencies.

The Rules of Criminal Procedure do not contemplate that technicalities bar request for instructions. By A.R.S. 17, Criminal Rule 274, requests for instructions may be made orally. The defendant had no opportunity to orally request a modification had the lower court been of the opinion that the proposed instruction was deficient simply because the lower court considered the instruction as a whole erroneous as a comment on the evidence. By an affirmance the defendant would now be deprived of the opportunity to have his defense fully submitted to the jury.

■ The State seeks to affirm upon the theory that the instruction made no reference to the specific facts to be inferred. If this is a valid objection to the instruction, and we are of the opinion it is not, then certainly in common justice, so that the jury could fully consider his defense, the defendant should have been allowed to request an oral modification incorporating the specific facts sought to be inferred.

■ It is suggested that the instruction is an abstract instruction. An abstract instruction is one which broadens the issues beyond the scope of the evidence and thus impliedly submits to the jury issues and questions not properly before it. See the excellent discussion in Godvig v. Lopez, 185 Or. 301, 202 P.2d 935.

■ We specifically reversed the giving of an abstract instruction in Glenn v. Chenowth, 71 Ariz. 271, 273, 226 P.2d 165, in this language:

"Defendants contend that instruction No. 5 has no application to the facts in this case and is merely an abstract statement of law. This instruction is taken word for word from 6 C.J.S., Assault and Battery, § 18, Self Defense pg. 813. While it is a correct statement of the law it has no application here because neither party relied on self defense. Abstract propositions of law even though correct are not favored in Arizona. Butane Corp. v. Kirby, 66 Ariz. 272, 187 P.2d 325."

In the case at bar, this is not an abstract instruction because it had direct relation to vital issues and evidence in the case confining the jury to the true issues and not diverting it to extraneous ones.

We think that the rule permitting an inference is not based only on the notion that the destruction is motivated by a desire to conceal the truth. Evidence, of course, may be innocently destroyed without a fraudulent intent simply through carelessness or negligence or, as the case might have appeared to the jury here, an unwillingness to make the necessary effort to preserve it. In any event, the State cannot be permitted the advantage of its own conduct in destroying evidence which might have substantiated the defendant's claim regarding the missing evidence. But the damage to the defendant is equally great because the evidence was no longer available at the trial by which the facts with certainty could be determined.

That the jury may conclude a fraudulent intent from the spoilation or destruction of an article is a fact which may be inferred from all the evidence. Such a deduction is not necessary in order that the inference as to the true fact may operate in the defendant's favor. The jury could accept the explanation that the dynamite was dangerous to keep and still believe that this was not an adequate reason for its destruction in the light of its relative importance to the outcome of the case. Had the instruction been given, the jury would have been in the position of weighing the explanation and, if they believed it was not adequate, an inference unfavorable to the prosecution could have been drawn. *This in itself could create a reasonable doubt as to the defendant's guilt.*

For the foregoing reasons, this case is reversed and remanded for a new trial.

LOCKWOOD, V. C. J., and BERNSTEIN, J., concurring.

UDALL, Chief Justice (dissenting).

I dissent from the views expressed by the majority in this case. The opinion contains oblique suggestions that modifications to the requested instruction may have been in order. But aside from recommending incorporation of the specific facts

to be inferred, there is no mention of the modifications desired. I can only conclude, therefore, from reading the opinion as a whole, that the charge under examination is approved *in haec verba*.

Omitting verbiage, the instruction provides: "If you find that the plaintiff * * * has destroyed * * * any evidence whose contents or quality are in issue, you may infer that the true fact is against their [the state's] interest." It was uncontradicted, in fact readily acknowledged by all parties—both at trial and in the briefs here —that the state had destroyed the dynamite and wires. In net effect, therefore, the instruction would only have advised the jury: "[Y]ou may infer that the true fact is against * * * [the state's] interest."

The propriety of such an inference when destruction occurs under circumstances indicating a motive to suppress evidence is beyond dispute. See United States v. Remington, 191 F.2d 246 (2d Cir. 1951), cert. denied, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325 (1952). I agree further that adverse inferences are available although the destruction results only from carelessness or an "unwillingness to make the necessary effort to preserve it." In such cases the defendant is needlessly deprived of the opportunity to establish his case. But I would not penalize the prosecution when its action is neither malicious nor inadvertent. The present record shows that the course

adopted by the state may well have been only a calculated effort to avoid the hazards of using inadequate storage facilities for highly explosive materials. The county and city officials were surely justified in accepting the advice of their experts that the dynamite was fully active and dangerous to life and limb of all those who came into contact with it, or even into the area where it was kept. And Captain Donald Pierson, after stating that the dynamite was in good condition and active, testified as follows:

"Q * * * Captain, could the dynamite have been saved for the purposes of an analysis?

"A Yes, it could have if—it could have been, yes. The County, however, nor the City have proper storage facilities for this type .of thing, for these types of items, and in the Air Force we are restricted in the type of explosives that we can store together and storage is critical out at Davis Monthan right now."

Before its removal to the Air Force Base the dynamite was located in the City Hall basement with clerical personnel working in the immediate vicinity.

In my opinion, it was at least a jury question whether the state's explanation of its

behavior was true and if so, whether it acted reasonably in the premises. But the requested instruction withheld that matter from jury consideration. Only the qualifying word "may" carried any hint that the inferences need not be drawn. This was insufficient. Without an express statement of the alternative to the adverse inferences, the instruction was tantamount to a directed verdict of acquittal.

There is no doubt that refusal to give a properly framed instruction would constitute reversible error. Defense counsel, however, made no attempt to amend the charge and has not argued the point here. Our function is not to revise the tactics of trial counsel and never before have we attempted to do so. His purpose could have been to avoid mention of the state's explanation at all costs. There was evidence that the dynamite had been destroyed by detonation and was thus active and dangerous. Rather than call this fact to the jury's attention, counsel might well have been satisfied to rest on defendant's own testimony. Whatever the reasons, he elected to stand on the instruction as requested. For reasons already stated, I consider that instruction an inaccurate statement of the law and believe it was properly rejected by the trial judge.

I would affirm.

JENNINGS, J., concurs in this dissent.