NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

REBECKA LYNNE PHILPOT, *Appellant.*

No. 1 CA-CR 15-0538
FILED 5-12-2016

Appeal from the Superior Court in Mohave County
No. S8015CR201400953
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Erika A. Arlington, PC, Flagstaff
By Erika A. Arlington
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

_____

**H O W E**, Judge:

¶1 This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Rebecka Lynne Philpot asks this Court to search the record for fundamental error. Philpot was given an opportunity to file a supplemental brief in propria persona. She has not done so. After reviewing the record, we affirm Philpot's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2 We view the facts in the light most favorable to sustaining the trial court's judgment and resolve all reasonable inferences against Philpot. *State v. Fontes*, 195 Ariz. 229, 230 ¶ 2, 986 P.2d 897, 898 (App. 1998).

¶3 In July 2014, Lake Havasu City Police received a call from an informant who stated that she could purchase methamphetamine from Philpot. Based on the informant's information, the police planned a "controlled buy," where the informant would go with Philpot to her supplier's location to buy the drugs. As is standard for controlled buys, the police furnished the informant with three $100 bills to purchase the drugs and a listening device through which the police could hear the informant's conversations with Philpot. Before giving the informant the cash, the police photocopied each of the bills.

¶4 Consistent with the plan, four officers followed the informant to a grocery store parking lot, where she had agreed to meet Philpot. Shortly thereafter, Philpot pulled into the parking lot and the informant got into Philpot's truck. As Philpot and the informant then drove out of the parking lot, Philpot told the informant that they were headed to Philpot's friend R.M.'s apartment to get the methamphetamine. Once at the apartment complex, Philpot and the informant remained in the truck for several minutes as Philpot explained to the informant that R.M. could not provide the drugs, but that one of R.M.'s friends could. The officers pulled into a

nearby shopping center and were unable to see Philpot and the informant, but could hear their conversation through the informant's listening device.

¶5 Philpot then got out of the truck and met with a man. She then returned to the truck with a plastic baggie of methamphetamine. Philpot told the informant that she had purchased more than the informant had asked for, so she asked the informant to follow her home, where Philpot was going to weigh and separate the drugs. She then drove the informant back to her car and headed home.

¶6 The officers debriefed the informant immediately after Philpot dropped her off at her car. Knowing that Philpot was driving home with the methamphetamine in her possession, the officers arranged a traffic stop of Philpot. Two patrol officers stopped Philpot and arrested her. In a subsequent search of Philpot and her truck, police found one of the $100 bills they gave the informant to buy the drugs with and approximately 7.5 grams of methamphetamine in a plastic baggie.

¶7 An officer interviewed Philpot after her arrest. During that interview, Philpot told the officer that R.M. was not at his apartment when she and the informant arrived, but that he had called his friend, who was temporarily staying in his apartment, to "middle the deal." After the friend agreed, R.M. called Philpot back to let her know the deal was on. The State charged Philpot with one count of conspiracy to sell dangerous drugs, one count of possession of dangerous drugs for sale, and one count of possession of drug paraphernalia.

¶8 During Philpot's jury trial, the officer that interviewed Philpot after her arrest testified that although he turned on the recording equipment at the beginning of her interview as standard practice required, the interview did not actually record. He further testified that he was unsure whether the equipment ever generated a recording, or if the recording was overwritten by something else. In either case, the officer testified that no recording of the interview with Philpot existed. Instead, the officer testified regarding what Philpot relayed to him during that interview.

¶9 After the State rested its case-in-chief, Philpot moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20 for the conspiracy and possession of dangerous drugs charges. The trial court denied the motion. Philpot then requested that the trial court instruct the jury pursuant to *State v. Willits*, 96 Ariz. 184, 191, 393 P.2d 274, 281 (1964), which permits the jury to infer that missing evidence would have

been exculpatory, regarding Philpot's post-arrest interview recording. Philpot argued that the recording "could tend to be helpful" to her because "seeing a video often can put the interview in a different light, allow the jury to see demeanor of both the officer and the defendant." The trial court, denying Philpot's request, concluded that such instruction would "invit[e] the jury to speculate that something was relevant, where there's been no testimony whatsoever suggesting the inaccuracy of the officers relating to what happened." The jury convicted Philpot on all counts.

¶10        The trial court sentenced Philpot to mitigated and concurrent sentences of 4 years' imprisonment for the conspiracy conviction, 6.5 years' imprisonment for the possession conviction, and 6 months' imprisonment for the paraphernalia conviction, applying 63 days' presentence incarceration credit for each sentence. The trial court also sentenced Philpot to 11 months of community supervision after her prison sentences. Finally, the trial court imposed fines and administrative fees. Philpot timely appealed.

## DISCUSSION

¶11        We review Philpot's convictions and sentences for fundamental error. *See State v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991).

¶12        Counsel for Philpot has advised this Court that after a diligent search of the entire record, she has found no arguable question of law. We have read and considered counsel's brief and fully reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Philpot was represented by counsel at all stages of the proceedings, and the sentence imposed was within the statutory limits. We decline to order briefing, and we affirm Philpot's convictions and sentences.

¶13        Upon the filing of this decision, defense counsel shall inform Philpot of the status of her appeal and of her future options. Defense counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Philpot shall have 30 days from the date of this decision to proceed, if she desires, with a pro per motion for reconsideration or a petition for review.

## CONCLUSION

¶14      For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama