NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JEREMY EDWARDS REUVERS, *Appellant.*

No. 1 CA-CR 24-0188

FILED 12-17-2025

Appeal from the Superior Court in Maricopa County
No.  CR2023-007481-001
The Honorable Joseph Shayne Kiefer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Jacob R. Lines
*Counsel for Appellee*

Law Office of Randal B. McDonald, Phoenix
By Randal Boyd McDonald
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

_____

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Samuel A. Thumma joined.

_____

**C A T T A N I**, Judge:

¶1         Jeremy Edwards Reuvers appeals his convictions and sentences for sexual abuse and attempted sexual abuse.  We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2         On April 14, 2023, Reuvers attended his 12-year-old daughter's dance competition.  The 14-year-old victim, Kate (a pseudonym), mentored Reuvers's daughter at their Phoenix dance studio.  Although Kate was not competing that day, she attended to support the younger dancers from the studio.  Kate was wearing high-waisted jeans and a shirt tucked into her sports bra so it appeared cropped, revealing part of her abdomen and the detail on her jeans.

¶3         Reuvers approached Kate when she was in the hallway with her friend and his mother.  Reuvers put both hands up her shirt, touched her breasts, untucked the shirt from her sports bra to unroll it, patted her stomach, said "that's better," and walked away quickly.  The friend saw the outline of Reuvers's hands under Kate's sports bra and shirt when Reuvers touched Kate.

¶4         After the initial shock of the encounter, Kate left the hallway to get water and clear her mind.  She re-tucked her shirt into her sports bra in private.  When Kate returned, she sat on the floor and talked to a dance mom, Amy, who had seen what happened.  While they spoke, Reuvers approached Kate again, knelt down, commented on her shirt, and reached towards her chest, but Amy swatted his hand away before he touched Kate, telling him not to touch her.

¶5         Amy talked to the dance studio's owner, and the owner asked Reuvers to leave, telling him she was going to contact Kate's father and possibly the police.  The owner called Kate's father, who later called the police.  The State charged Reuvers with sexual abuse and attempted sexual abuse, both dangerous crimes against children.  A.R.S. § 13-1404.

¶6        Reuvers testified at trial, stating that he was uncomfortable with the way girls dressed at dance competitions and that he noticed that Kate's stomach was showing because of the way she was wearing her shirt. Reuvers claimed that he merely grabbed Kate's shirt with his fingers and pulled it down at the sides of her body.  He denied putting his hands up her sports bra.

¶7        The jury found Reuvers guilty as charged.  The court suspended sentence, imposing concurrent 10-year periods of supervised probation[1] with sex offender terms.  The court also required Reuvers to register as a sex offender pursuant to A.R.S. § 13-3821(A)(3).

¶8        Reuvers timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A)(1).

## DISCUSSION

¶9        Reuvers argues that the superior court erred by (1) allowing the State to comment, during opening statements, on hearsay evidence that would ultimately be subject to a limiting instruction, (2) allowing a witness to testify to statements the victim made after the incident, (3) allowing the State to present testimony about and comment on Reuvers's pre-arrest, pre-*Miranda*[2] silence, (4) refusing to let Reuvers impeach the victim by testifying about her exaggerating on social media, and (5) failing to sua sponte give a *Willits*[3] instruction on the State's alleged failure to obtain security footage of the incident.

## I.       State's Opening Statement.

¶10        During the State's opening statement, Reuvers objected to a slide that reflected the conversation in which the dance studio owner confronted Reuvers: "[The owner] confronts [Reuvers] about touching [Kate's] breasts. [Reuvers] says, 'Okay.'"  The court overruled the objection,

---

[1]        In an apparent typo, the sentencing transcript notes "also a term of two years" supervised probation as to the second count, whereas the sentencing order specifies "a term of 10 years" (as for the first count).  The court's intention—10 years' supervised probation—is clear, however, given that Reuvers requested 10 years of supervised probation (and the State requested a longer term) at the time of sentencing, and two years' probation is not an authorized punishment for the offense of conviction.  *See* A.R.S. § 13-902(A)(3), (E).

[2]        *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]        *State v. Willits*, 96 Ariz. 184 (1964).

finding Reuvers's statement to be admissible as an opposing party's statement and that the statement was relevant and its probative value was not substantially outweighed by a danger of unfair prejudice.

¶11     When the owner testified later during trial, Reuvers objected to her testimony about what she said to Reuvers ("You touched [her] breast twice") and his response ("Okay"). The court permitted the testimony but gave the jurors a limiting instruction that they were not to consider the owner's accusation for its truth, but only for the effect it may have had on Reuvers. In the final jury instructions, the court reminded the jurors that when evidence is admitted for a limited purpose, they were to consider it only for that limited purpose. The court also instructed the jurors that the lawyers' comments are not evidence.

¶12     On appeal, Reuvers argues that the superior court abused its discretion by allowing the State to comment on this evidence during opening statements because when the same evidence was presented at trial, the jurors were told it was only admissible for a limited purpose. He further argues that his response to the owner's allegations should have been excluded under Arizona Rule of Evidence ("Rule") 403 because the danger of unfair prejudice substantially outweighed any probative value. *See State v. Riley*, 248 Ariz. 154, 177, ¶ 70 (2020).

¶13     We review the superior court's ruling on the content of opening statements for an abuse of discretion. *State v. Pedroza-Perez*, 240 Ariz. 114, 116, ¶ 8 (2016). A party may refer to specific evidence in its opening statement when there is a good faith basis for believing the proposed evidence exists and will be admitted in evidence. *Id.* at ¶ 12. Although the superior court may require the party to identify the good faith basis for the proffered evidence, it may not impose a more exacting standard for inclusion in the opening statement. *Id.*

¶14     Here, the State had a good faith basis for believing the dance studio's owner's accusation was admissible not for the truth of the matter asserted but for its effect on the listener (Reuvers). *See State v. Hernandez*, 170 Ariz. 301, 306 (App. 1991) ("Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue."); *see also* Ariz. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted," as opposed to its effect on the listener). The State likewise had a good faith basis to believe that Reuvers's response was admissible as an opposing party's statement. *See* Ariz. R. Evid. 801(d)(2) (a statement made by and offered against an opposing party is not hearsay). Thus, the superior

court did not err by concluding that the statements were not hearsay.  And the court's subsequent limiting instruction as to the owner's accusation did not affect the admissibility of the statement or reference to it in the State's opening statement slides.

¶15　　　　Finally, the superior court thoroughly weighed the statements' relevance and potential prejudice, reminded the jury that the lawyers' statements were not evidence, and gave the jury a limiting instruction, curing any potential prejudice.  *Pedroza-Perez*, 240 Ariz. at 117, ¶ 13 ("We presume that jurors follow this instruction [that opening statements of counsel are not evidence] and such an instruction typically cures any potential prejudice.").  The superior court thus did not abuse its discretion by allowing the studio owner's testimony or by allowing the State to comment on the conversation during opening statements, even though the testimony was later subject to a limiting instruction.

## II.　　Victim's Post-Incident Statements.

¶16　　　　Reuvers next argues that the superior court abused its discretion by applying the excited-utterance hearsay exception to allow a dance mom, Amy, to testify about her conversation with Kate after the first incident.  We review a superior court's ruling on the excited-utterance exception for an abuse of discretion.  *State v. Whitney*, 159 Ariz. 476, 484 (1989).

¶17　　　　On direct examination, Amy testified about her conversation with Kate after the first incident, and Reuvers objected on hearsay grounds. The court sustained Reuvers's objection but allowed the State to elicit more foundation to show Kate's statement qualified as an excited utterance. Amy then testified that the conversation happened seconds after the first incident, that Kate was upset, tearful, and confused, and that she was consoling Kate.  Reuvers renewed his hearsay objection when the State asked what Kate told Amy, and the court overruled it, later clarifying that the testimony satisfied the requirements for an excited utterance under Rule 803(2) and noting that the rule does not require that the statement be spontaneous or unsolicited.  Amy then testified about Kate's description of what happened: that her shirt was tucked in, that Reuvers pulled it down from under her sports bra, and that his hands touched her breast.

¶18　　　　Under Rule 803(2), an excited utterance is "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Statements falling within this category are an exception to the rule against hearsay.  For the exception to

apply, there must be proof of "(1) a startling event, (2) a statement made soon after the event to ensure the declarant has no time to fabricate, and (3) a statement which relates to the startling event." *State v. Strong*, 258 Ariz. 184, 201, ¶ 49 (2024) (citation omitted).

**¶19**        Reuvers argues that Kate's statements to Amy do not satisfy the second element of this test, which he argues "is not exclusively a temporal test" and instead requires that "the speaker must still be 'excited.'" He further asserts that the superior court mistakenly credited Amy's testimony that it was "seconds" between the incident and her conversation with Kate because Kate had testified that she walked away to clear her mind, got water, and spoke with other dancers before the conversation with Amy. Reuvers argues that this was evidence that Kate was not still "excited" and gave her time to fabricate her story.

**¶20**        The excited-utterance exception is not subject to a precise time limit. *Id.* at ¶ 50. Instead, a court must consider the totality of the circumstances, including the time between the exciting event and the statement, the declarant's physical and emotional condition, and the nature of the offense. *Id.* The declarant's physical and emotional condition is most important to the analysis, and "[t]he statements need not be made immediately after the event, nor at the place of the event, and, in the case of children, 'where excitement may last longer', courts have extended the time factor requirement." *State v. Rivera*, 139 Ariz. 409, 411 (1984). Finally, excited utterances are not necessarily inadmissible when made in response to a question. *State v. Johnson*, 183 Ariz. 623, 634 (App. 1995).

**¶21**        In this case, the superior court had ample evidence from which to find that Kate was still under the stress of the offense when speaking to Amy. While there was conflicting testimony about the timing of Kate's statement, Amy testified that Kate was upset, tearful, and confused before their conversation and that Kate's friend had to console her. Before Amy testified, multiple other witnesses described Kate's emotional condition between the two times Reuvers approached her. The record supports the superior court's finding that Kate was still under the stress of the first encounter when she told Amy what happened. Any conflict in the testimony about the timing of this conversation goes to its weight, not its admissibility. *See State v. Jeffers*, 135 Ariz. 404, 420 (1983) ("Admission as a hearsay exception is not foreclosed by the fact that a statement's reliability has been impugned."). Thus, the court did not abuse its discretion by allowing Amy's testimony about Kate's statement.

### III.     Comment on Reuvers's Silence.

¶22     Next, Reuvers argues that the superior court erred by failing to exclude evidence of his refusal to answer a dance dad's questions about the incident. Reuvers asserts that this refusal was an invocation of his Fifth Amendment right to remain silent, rendering it inadmissible. We review the court's factual findings on the issue for an abuse of discretion but consider de novo its legal conclusions, including its ultimate assessment of constitutionality. *See State v. Newell*, 212 Ariz. 389, 397, ¶ 27 (2006) (citing *State v. Moody*, 208 Ariz. 424, 445, ¶ 62 (2004)).

¶23     The State moved in limine to admit as a tacit admission evidence of Reuvers's pre-arrest, pre-*Miranda* silence in a conversation with a dance dad, Joe, in the hotel parking lot after the dance studio owner asked Reuvers to leave. The State asserted that Joe asked Reuvers "What is going on?" and Reuvers responded that "I'm not answering questions. I'm not saying anything." Reuvers disputed Joe's recollection of his statement and further urged that, in any event, his response could not be introduced in the State's case in chief as substantive evidence or a tacit admission of guilt. Over Reuvers's opposition, the court found the exchange admissible, noting that no Fifth Amendment analysis was necessary because there was no government involvement or compulsion. *See* U.S. Const. amend. V. The court found (1) the conversation was relevant, (2) no danger of improper prejudice, and (3) that the jury could determine which account to believe. Joe then testified about his conversation with Reuvers in the hotel parking lot.

¶24     Reuvers argues that his statements to Joe (and the State's comments about them) should have been excluded under the Fifth Amendment. Reuvers asserts that his refusal to answer was an invocation of his constitutional right to remain silent immediately after being accused of committing a crime, in response to questioning that could have resulted in injurious disclosure, and (because he was aware the police were being called) in response to the threat of imminent state action.

¶25     As an evidentiary matter, a defendant's silence in the face of a statement adverse to his interests may be admissible as a tacit admission, provided the defendant could clearly hear the statement and the circumstances "naturally call for a reply if [he] did not intend to admit such facts." *State v. VanWinkle*, 229 Ariz. 233, 235, ¶ 7 (2012) (citation omitted). The Fifth Amendment, however, establishes a privilege against self-incrimination, including a right to remain silent when the circumstances and substance of questioning indicate a response might result in "injurious

disclosure." *Id.* at 236, ¶ 12 (citation omitted). The State generally cannot comment on a defendant's exercise of this constitutional right. *Id.* But "when a defendant's silence is not the result of state action, the protections of the Fifth Amendment do not prohibit the state's comment on that defendant's pre-arrest, pre-*Miranda* silence." *State v. Lopez*, 230 Ariz. 15, 20, ¶ 16 (App. 2012).

**¶26**        Reuvers acknowledges the rule announced in *Lopez* but argues the circumstances here compel a different result. He attempts to distinguish the silence at issue in *Lopez*, where the defendant simply did not turn himself into police to "give his side of the story" before being arrested, from Reuvers's silence when directly asked about the crime. *See* 230 Ariz. at 19, ¶ 12. But even though Reuvers was asked about the offense point-blank, he was asked by a private citizen (Joe) before he had any contact with police (who did not arrive at the hotel until after Reuvers left). He thus remained "under no official compulsion whatever, either to speak or to remain silent." *See id.* at 20, ¶ 15 (quoting *Jenkins v. Anderson*, 447 U.S. 231, 243–44 (1980) (Stevens, J., concurring)); *see also VanWinkle*, 229 Ariz. at 236–37, ¶¶ 14–15 (recognizing a Fifth Amendment right to remain silent "once in custody," which necessarily involves state action). Although Reuvers suggests that his silence was induced by the threat of imminent state action (being told the police might be called), we decline to draw a line different from that set forth in *Lopez*. *See* 230 Ariz. at 20, ¶¶ 16–17. Accordingly, the superior court did not err by declining to preclude, on Fifth Amendment grounds, Reuvers's pre-arrest, pre-*Miranda* silence.

## IV.        Impeaching the Victim.

**¶27**        Reuvers argues that the superior court incorrectly refused to let him impeach Kate by testifying that she had previously gotten in trouble for exaggerating on social media. We review rulings on the admissibility of impeachment evidence for an abuse of discretion. *See State v. Robinson*, 165 Ariz. 51, 58 (1990); *State v. Rutledge*, 205 Ariz. 7, 10, ¶ 15 (2003).

**¶28**        On cross-examination, Reuvers asked Kate if she had ever been in trouble for not telling the truth or exaggerating, and she answered that she had been in trouble with her parents before for both. When asked if she had ever been in trouble for exaggerating in a social media post, Kate said no.

**¶29**        Before Reuvers testified, the parties addressed Reuvers's desire to impeach the victim by testifying that she had previously gotten in trouble for exaggerating on social media. Reuvers indicated he would

testify that Kate posted a social media video saying two men in her neighborhood were following her and were going to kill her and that the dance studio asked her to remove the video because it was not true. Reuvers had seen the video, and he had heard from his wife who had heard from the studio owner that the studio asked Kate to take it down. The court precluded this testimony, noting that the victim had not been asked about this video and that Reuvers's knowledge of the incident was grounded in hearsay, but the court offered to reconsider if Reuvers presented other foundation.

¶30 On appeal, Reuvers argues that Kate's social media post was a prior inconsistent statement that he should have been allowed to prove by extrinsic evidence. He asserts that Kate's denial when asked if she had ever been in trouble for exaggerating on social media was "plainly inconsistent with her social media post that she was told to remove because it was untrue."

¶31 A witness's credibility may be impeached by prior inconsistent statements, which (subject to certain constraints) may be proven by extrinsic evidence. Ariz. R. Evid. 613(b); *State v. Hernandez*, 232 Ariz. 313, 322, ¶ 41 (2013); *State v. Allred*, 134 Ariz. 274, 276–77 (1982); *cf.* Ariz. R. Evid. 801(d)(1)(A) (characterizing a declarant-witness's prior inconsistent statement as non-hearsay). Here, however, Kate's testimony was not inconsistent with any identified prior statement. *See Hernandez*, 232 Ariz. at 322, ¶ 41 (noting the need for a material inconsistency); Ariz. R. Evid. 801(a) (defining "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion"). In light of Kate's denial of getting in trouble for exaggerating on social media, a prior inconsistent statement would be one in which Kate, for example, acknowledged getting in trouble for that reason—but Reuvers's proffer included nothing of the sort. More substantively, even assuming the truth of Reuvers's proffer, being asked to take down a social media post does not establish that Kate knew something was an exaggeration or that she "got in trouble" for the post such that her testimony would be arguably inconsistent with her prior knowledge (if not a prior statement).

¶32 Moreover, even when considered as direct evidence of prior exaggeration, *cf.* Ariz. R. Evid. 608, Reuvers's proffered testimony relied on multiple layers of hearsay, *see* Ariz. R. Evid. 801(c). Reuvers's purported knowledge that Kate had exaggerated in a social media post was based on information he had learned third-hand through his wife who had heard it from the dance studio owner, neither of whom testified to the matter.

Accordingly, the superior court did not abuse its discretion by preventing Reuvers from impeaching Kate with this testimony.

## V.     *Willits* **Instruction.**

**¶33**        Finally, Reuvers argues that the superior court erred by not sua sponte giving a *Willits* instruction on the State's failure to obtain security footage of the incident. Because Reuvers did not request a *Willits* instruction at trial, we review for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005).

**¶34**        A *Willits* instruction permits jurors to draw an inference unfavorable to the State if they find that the State "lost, destroyed or failed to preserve material evidence that might aid the defendant" and that "the explanation for the loss [is] inadequate. *State v. Youngblood*, 173 Ariz. 502, 506 (1993) (emphasis omitted); *see also Willits*, 96 Ariz. at 191. A defendant is entitled to a *Willits* instruction upon a showing that the State "failed to preserve material evidence that was accessible and might have tended to exonerate the defendant" and that the failure resulted in prejudice. *State v. Hansen*, 156 Ariz. 291, 295 (1988). Failure to "act in a timely manner to ensure the preservation of evidence that is obviously material, and reasonably accessible," may justify such an instruction. *State v. Perez*, 141 Ariz. 459, 464 (1984).

**¶35**        Here, however, there was no evidence that material surveillance footage ever existed. Although the hotel had surveillance cameras on site, a detective testified that, according to hotel staff, no cameras pointed toward the part of the hallway where the offenses occurred. Reuvers provided no evidence that the cameras captured the relevant part of the hallway. Absent some basis to conclude that material footage existed at some point, Reuvers has not shown that the State failed to preserve material evidence or that he was prejudiced thereby. Reuvers's claim of error thus fails.

### CONCLUSION

**¶36**        We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR